IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA BAUMEISTER, et al.,

          **Plaintiffs,**

vs.                              **No. CIV 05-1044 LCS/ACT**

NEW MEXICO COMMISSION
FOR THE BLIND, et al.,

          **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, filed on January 17, 2006.  (Doc. 40.) Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties consented to have me serve as the presiding judge and enter final judgment.  (*See* Docs. 27, 30.)  After having meticulously considered the Motion, briefs, oral arguments, and applicable law, I find that the Motion should be **GRANTED** as more fully described herein.

I.       **PROCEDURAL BACKGROUND**

Plaintiffs, all of whom have adult-onset blindness and are former students and residents of Defendant New Mexico Commission for the Blind Adult Orientation Center, filed their original Complaint in state court on August 2, 2004, alleging various state and federal claims against twenty Defendants.  (*See* Docs. 1 at 1-2; 38 at 3.)  Defendants removed the case to federal court on September 30, 2005 (Doc. 1) and later filed two motions to dismiss: one for insufficient service of process (Doc. 3) and the other for lack of subject matter jurisdiction and failure to state a claim.  (Doc. 5.)  I filed a Memorandum Opinion and Order denying the motion to dismiss for

insufficient service of process and allowed Plaintiffs to file an amended complaint; consequently, I denied the Defendants' second motion to dismiss as moot.  (Doc. 37.)

**A.      General Allegations.**

Plaintiffs' First Amended Complaint ("Complaint") sets forth a number of allegations common to all claims.  (Doc. 38 at 3-6.)  These allegations include: 1) Defendants New Mexico Commission for the Blind ("CFTB") and New Mexico Commission for the Blind Adult Orientation Center ("AOC") failed to provide Plaintiffs with appropriate counseling services;[1]   2) CFTB/AOC failed to address, curb, or discipline the disrespectful and cruel behavior of their staff toward students; 3) CFTB/AOC did not properly supervise or provide adequate training to staff or teachers nor did they require dormitory staff to attend all training sessions;                4) CFTB/AOC do not have provisions to adequately address language-challenged and non-English speaking students; 5) CFTB/AOC do not have protocols for training mobility instructors; 6) CFTB/AOC failed to maintain accurate or thorough records of students' stays at the AOC;     7) CFTB/AOC failed to hire qualified and trained teachers and staff; 8) CFTB/AOC maintained an unwritten custom or policy which permitted or condoned discrimination, mental, physical, and sexual abuse, social isolation, medical neglect, extortion, denial of access to visual handicap aids, deprivation of food and water, unreasonable search and seizure, and violations of Plaintiffs' privacy including interception of mail and telephone calls.  (*Id.*)

**B.      Linda Baumeister's Claims.**

Plaintiff Linda Baumeister's claims arise from three incidents.  First, while being

---

[1] Defendants CFTB/AOC will sometimes be referred to in this Memorandum Opinion and Order as the "agency Defendants."

chaperoned by Defendant Lightfoot during "cane traveling class," Baumeister was accosted by a stranger. (Doc. 38 at 6.) Lightfoot failed to prevent the attack or assist Baumeister, and he refused to allow Baumeister to remove her sleep shades in order to protect herself with her limited vision. (*Id.*) Second, while attending a parade chaperoned by Defendant Bruselas, Baumeister injured her foot. (*Id.*) Bruselas left Baumeister sitting on a bench without food, water, or immediate medical treatment. (*Id.* at 6-7.) After Baumeister visited the hospital, she called Defendant Martinez for help getting back to the Center; Martinez advised Baumeister to get back to the Center on her own. (*Id.* at 7.) In a third incident, Martinez locked Baumeister out of the Center for forty-five minutes and later mocked her. (*Id.*) Baumeister reported the incident to Defendant Vigil, who accused Baumeister of being an instigator, a liar, and a cheat. (*Id.*) Baumeister asserts that Defendants CFTB and AOC failed to provide her with transportation, do not have a formal grievance procedure, do not have written policies and procedures for staff, and do not have a system for staff to document and report such incidents. (*Id.* at 7-8.)

From these incidents, Baumeister brings four[2] claims: 1) As to Defendants Lightfoot, Vigil, Bruselas, and Martinez, for violations of 42 U.S.C. § 1983 for denial of due process "by failing to provide Plaintiff with education, training and orientation services, and by depriving Plaintiff of Plaintiff's property without due process . . . ." (*Id.* at 8.) 2) As to the same Defendants, for violations of § 1983 for bodily integrity and personal security by "subjecting

---

[2] In response to Defendants' previous motion to dismiss, Plaintiffs conceded that their original complaint failed to state a claim under 42 U.S.C. § 1983 against the agency Defendants. (Doc. 29 at 4.) Plaintiffs mistakenly left those claims in their Amended Complaint and now request that I enter an appropriate order dismissing those claims. (Doc. 50 at 2.) I will do so in this Memorandum Order and Opinion; therefore, I will not list the agency Defendants in discussing Plaintiffs' § 1983 claims.

Plaintiff to obvious cruelty [which] created a dangerous environment . . . ." (*Id.* at 9.)  3) As to the same Defendants, for violations of § 1983 for equal protection by treating Plaintiff "differently than other students at AOC who were similarly situated by failing to provide a safe environment, . . . failing to provide qualified and trained teachers and staff, failing to provide proper and adequate supervision, . . . and failing to properly supervise and/or discipline          staff . . . ." (*Id.* at 10.)  4) As to Defendants CFTB and AOC, for violations of section 504 of the Rehabilitation Act because the "actions and omissions of Defendants CFTB/AOC resulted in discrimination on the basis of disability, consisting of deprivation of educational opportunity, exclusion from educational and nonacademic opportunities, [and] placing Plaintiff in a dangerous environment with untrained and unqualified personnel . . . ." (*Id.* at 11.)

      **C.      David Lopez's Claims.**

      Plaintiff David Lopez, who suffers from seizures in addition to being blind, adds several allegations to the complaint: 1) Defendant McClarin made sexual advances toward Lopez on several occasions; 2) Defendant Martinez refused to help Lopez with necessary medications after Lopez had a seizure; 3) Defendant Flores regularly left Lopez alone and in dangerous situations during cane traveling classes; 4) Defendant Flores, who is also blind, could not assess situations wherein Lopez would have seizures after being forced to participate in class outside in extreme heat; and 5) AOC employees opened Lopez's mail, searched Lopez's room without cause, and improperly monitored Lopez's telephone calls.  (*Id.* at 12-13.)

      From these and the general allegations, Lopez brings the same four claims that Baumeister did.  1) Against Defendants McClarin, Martinez, and Flores, for violations of § 1983 for denial of due process.  (*Id.* at 13.)  2) Against the same Defendants for violations of § 1983 for bodily

4

integrity and personal security.  (*Id.* at 14.)  3) Against the same Defendants for violations of §

1983 for equal protection.  (*Id.* at 15.)  4) And against Defendants CFTB and AOC for violations

of Section 504 of the Rehabilitation Act.  (*Id.* at 16.)

> ### D.     Carla Perea's Claims.

Plaintiff Carla Perea adds these allegations to the Complaint: 1) Defendant Martinez

routinely allowed strangers into Perea's student quarters; and 2) these strangers extorted $6,000

from Perea by threatening to "beat her up" if she did not pay them.  (*Id.* at 17.)  Like the first two

Plaintiffs, Perea brings the same three § 1983 claims (for denial of due process, bodily integrity

and personal security, and equal protection) against Defendant Martinez.  (*Id.* at 18-20.)

Likewise, Perea claims Defendants CFTB and AOC violated section 504 of the Rehabilitation

Act.  (*Id.* at 21.)

> ### E.     Victoria Lopez's Claims.

Plaintiff Victoria Lopez, who could speak and read only in Spanish, adds the following

allegations: 1) after being injured during a cane traveling class chaperoned by Defendant Vigil,

Lopez did not receive medical treatment or transportation to a hospital; 2) Defendant Bruselas

mixed salsa into Lopez's dessert; 3) Lopez was required to sit in Defendant Lightfoot's computer

classes; Lightfoot conducted the classes in English and disrespected Lopez in front of other

students; 4) Lopez did not receive institutional documents in Spanish, nor did she get to use an

interpreter; 5) Lopez's Individualized Plan of Instruction dated June 4, 2003 did not set forth

goals or objectives; and 6) Defendant Coon openly insulted Lopez during cane traveling classes

and was insensitive to Lopez's language barrier.  (*Id.* at 22-23.)  Lopez brings the same three

§ 1983 claims (for denial of due process, bodily integrity and personal security, and equal

protection) against Defendants Coon, Lightfoot, Bruselas, and Vigil.  (*Id.* at 23-26.)  Lopez also

claims Defendants CFTB and AOC violated section 504 of the Rehabilitation Act.  (*Id.* at 26.)

> **F.      Demand for Relief and Motion to Dismiss.**

Plaintiffs ask for compensatory and punitive damages against the individual defendants.

(*Id.* at 27.)  They also seek injunctive relief, attorneys' fees, and costs under 29 U.S.C. § 794a, 20

U.S.C. § 1415(i), and 42 U.S.C. § 1988, and for other relief as the Court deems appropriate.

Defendants move the Court to dismiss this case pursuant to FED. R. CIV. P. 12(b)(1) for

lack of subject matter jurisdiction because the Plaintiffs failed to exhaust administrative remedies

and pursuant to 12(b)(6) for failure to state a claim.  *See* N.M. CODE R. § 6.101.2 (Weil 1998).

"As this court must always satisfy itself of jurisdiction before addressing the merits of a claim, we

turn to the exhaustion issue first."  *Cudjoe v. Independent Sch. Dist. No. 12*, 297 F.3d 1058, 1063

(10th Cir. 2002) (citing *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 811 (10th Cir.

1989)).

> **II.      STANDARDS.**

A motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1)

may take two different forms.  *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)

(cited in *Smith v. Dominguez*, Civ. No. 03-465, Doc. 26 at 4 (D.N.M. Jan. 23, 2004)).  The first

form is a facial attack, which challenges the sufficiency of the complaint.  *Holt*, 46 F.3d at 1002

(citation omitted).  The second attack goes beyond the allegations in the complaint and challenges

"the facts upon which subject matter jurisdiction depends."  *Id.* at 1003 (citation omitted).  Here,

Defendants' motion pursuant to Rule 12(b)(1) challenges whether Plaintiffs should have

exhausted the administrative remedies available under 29 U.S.C. § 722 – this is a fact upon which

subject matter jurisdiction depends.  *See Smith*, Civ. No. 03-465, Doc. 26 at 4.  In such instances,

the court "may not presume the truthfulness of the complaint's factual allegations . . . [, and has]

wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)[,]" but this will not convert the motion to dismiss

to a Rule 56 motion.  *Id.* (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F. 3d 1320,

1324 (10th Cir. 2002) (internal quotation marks and citation omitted)).  This is not a case where

"the jurisdictional issue is intertwined with the merits of the case," thereby converting the "Rule

12(b)(1) motion . . . to a Rule 56 motion for summary judgment."  *Smith*, Civ. No. 03-465, Doc.

26 at 4 (citing *Sizova*, 282 F.3d at 1324).  "[T]he jurisdictional issue [here] involves exhaustion of

administrative remedies, . . .  [so] there is no intertwining of the jurisdictional issue and the merits

of the case." *Id.* (citing *Sizova*, 282 F.3d at 1324-25).  Hence, I may properly treat the "motion as

one brought pursuant to 12(b)(1)."  *Holt*, 46 F.3d at 1003 (citation omitted).

      In considering Defendants' Motion to Dismiss for Failure to State a Claim under FED. R.

CIV. P. 12(b)(6), I must assume as true all well-pleaded facts and must draw all reasonable

inferences in favor of the Plaintiffs.  *See, e. g.*, *Sutton v. Utah State Sch. for Deaf & Blind*, 173

F.3d 1226, 1236 (10th Cir. 1999).  I may not dismiss Plaintiffs' cause of action for failure to state

a claim "unless it appears beyond doubt that [they] can prove no set of facts in support of [their]

claim[s] which would entitle [them] to relief." *Id.* (internal quotation marks and citations

omitted).  "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted.'"  *Id.* (quoting *Miller v. Glanz*,

948 F.2d 1562, 1565 (10th Cir.1991)).  "[G]ranting a motion to dismiss is 'a harsh remedy which

must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also

to protect the interests of justice.'" *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873

F. 2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F. 2d 975, 978 (10th

Cir. 1986)) (quoted in *Cannaday v. Bd. of Educ. of the Rio Rancho Pub. Sch.*, Civ. No. 04-1143,

Doc. 35, at 4 (D.N.M. July 12, 2005)). "These deferential rules, however, do not allow a court to

assume that a plaintiff 'can prove facts that [the plaintiff] has not alleged or that the defendants

have violated the . . . laws in ways that [the plaintiff has not] alleged.'" *Cannady*, Civ. No. 04-

1143, Doc. 35, at 4-5 (citing *Associated Gen. Contractors, Inc. v. California State Council of

Carpenters*, 459 U.S. 519, 526 (1983)).  "Although Plaintiffs' pleadings are to be liberally

construed, mere conclusory allegations without supporting factual averments will not suffice."

See *Martinez v. Espanola Pub. Sch.*, Civ. No. 04-0737, Doc. 44, at 8 (D.N.M. Dec. 22, 2005)

(citing *Brown v. Zavaras*, 63 F. 3d 967, 972 (10th Cir. 1995)).

### III.     ANALYSIS OF PLAINTIFFS' REHABILITATION ACT CLAIMS.

To the extent Plaintiffs' alleged injuries could have been addressed through proper

exhaustion of section 102(c)'s administrative procedures, I agree with Defendants that those

claims are not properly before this Court.  Furthermore, even if exhaustion was not required,

Plaintiffs have failed to state a claim under section 504 of the Rehabilitation Act.  The claims will

be dismissed.

### A.     The Relevant Sections of the Rehabilitation Act.

Plaintiffs claim that Defendants CFTB and AOC violated section 504 of the Rehabilitation

Act, which prohibits discrimination on the basis of disability by any program or activity that

receives federal financial funding.  *See Freed v. Consol. Rail Corp.*, 201 F.3d 188, 191 (3d Cir.

8

2000).  Specifically, the statute reads in part:

> No otherwise qualified individual with a disability in the United States, as defined
> in section 705(20) of this title, shall, solely by reason of her or his disability, be
> excluded from the participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal financial
> assistance . . . .

29 U.S.C. § 794(a).  Persons injured by violations of section 504 have available to them "the

remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" and are not

required to exhaust administrative procedures before bringing suit in federal court.  *Freed*, 201

F.3d at 191 (quoting 29 U.S.C. § 794a(a)(2)).  "[B]oth injunctive relief and monetary damages

are available under section 504."  *Jeremy H. ex rel. Hunter v. Mount Lebanon Sch. Dist.*, 95 F.3d

272, 279 (3d Cir. 1996) (citation omitted).  "[T]o be entitled to compensatory damages under

section 504 of the Rehabilitation Act, a plaintiff must prove the defendant intentionally

discriminated against her on the basis of disability."  *Swenson v. Lincoln County Sch. Dist. No. 2*,

260 F. Supp. 2d 1136, 1145 (D. Wyo. 2003) (citing *Powers v. MJB Acquisition Corp.*, 184 F.3d

1147, 1153 (10th Cir. 1999)).

Defendants argue that the remedies Plaintiffs seek are available under section 102(c) of the

Rehabilitation Act.  (*See* Doc. 41.)  "Title I of the Rehabilitation Act, 29 U.S.C. §§ 720-751,

authorizes grants 'to assist States in operating statewide . . . programs . . . [d]esigned to assess,

plan, develop, and provide vocational rehabilitation services for individuals with disabilities . . .'

with the goal of preparing and enabling such individuals to 'engage in gainful employment.'"

*Reaves v. Missouri Dep't of Elementary & Secondary Educ.*, 422 F.3d 675, 680 (8th Cir. 2005)

(quoting 34 C.F.R. § 361.1).  Section 102(c), codified at 29 U.S.C. § 722, provides for several

mandatory procedures to be established by the designated State programs.  For example, each

individual eligible for vocational rehabilitation services must be provided with a written individualized plan for employment.  § 722(b)(1), (2)(A).  The plan must describe specific services "needed to achieve the employment outcome, including . . . the provision of assistive technology devices and assistive technology services, and personal assistance services, including training in the management of such services . . . ."  § 722(b)(3)(B)(i)(I).

Section 722 also "requires participating States to establish procedures for mediation and review of 'determinations made by personnel of the designated State unit that affect the provision of vocational rehabilitation services to applicants or eligible individuals.'"  *Reaves*, 422 F.3d at 680 (quoting 29 U.S.C. § 722(c)(1)); *see also* N.M. CODE R. § 6.101.2 (Weil 1998).  If an eligible individual disagrees with a decision made under this section, there is a private right of action under § 722(c)(5)(J)(i), but it is available only to a "party aggrieved by a final decision" in the administrative proceedings described in § 722(c).  § 722(c)(5)(J)(i); *see also Wasser v. New York State Office of Vocational and Educ. Servs. for Individuals with Disabilities*, No. 01-CV-6788, 2003 WL 22284576, at * 12 (E.D.N.Y. Sept. 30, 2003).  In other words, an individual must exhaust certain administrative remedies under § 722(c)(5) before filing suit in federal court.  Once exhausted, the federal court may then review the records, hear additional evidence, and "grant such relief as the court determines to be appropriate."  § 722(c)(5)(J)(ii).

## B.     The Policy of Exhaustion.

In examining the exhaustion provision found in section 102(c), it is appropriate to find guidance in cases interpreting the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, because "the text and structure of the statutes are virtually identical." *Reaves*, 422 F.3d at 680-81.  Where the IDEA ensures that children with disabilities will receive

appropriate "'education and related services designed to meet their unique needs[,]'" *Cudjoe*, 297 F.3d at 1063-64 (quoting 20 U.S.C. § 1400(d)(1)(A) (2000)), the Rehabilitation Act was designed to ensure that adults with disabilities receive appropriate vocational rehabilitation services and training so that they may secure meaningful employment.  *Reaves*, 422 F.3d at 680. "The primary vehicle by which" children receive those services under the IDEA is an individualized education program ("IEP"); the primary vehicle by which adults receive their services under the Rehabilitation Act is an individualized plan for employment ("IPE").  *Cudjoe*, 297 F.3d at 1064, n.7; *Reaves*, 422 F.3d at 680.  Both statutes provide a "host of procedural safeguards . . . ."  *Cudjoe*, 297 F.3d at 1064.  These safeguards include the opportunity to participate in the development of either the IEP or IPE, mediation and review of decisions or complaints regarding services, the opportunity to have an impartial due process hearing, and the right to appeal the hearing decision where the state provides for such review.  (Doc. 6 at 7 (citing 20 U.S.C. § 1415(b)(1), (5)-(6), (e)-(g); 29 U.S.C. § 722(b)(2)(B), (c)(1)-(4), (5)(A)-(F); *Reaves*, 422 F.3d at 680).)  And under either statute, a person aggrieved by a final decision of a state agency may bring a civil action seeking judicial review.  20 U.S.C. § 1415(i)(2)(A); 29 U.S.C. § 722(c)(5)(J)(i).

For purposes of this case, there is one crucial difference between the two provisions: the IDEA's exhaustion provision, 20 U.S.C. § 1415(*l*), mandates that if a student who is eligible to receive the IDEA's benefits sues for relief available under the IDEA, she must have exhausted the administrative measures required by the IDEA, even if she brings suit under another statute. *Cudjoe*, 297 F.3d at 1064-65.  The Rehabilitation Act does not contain a similar directive. Nevertheless, several principles lead to the conclusion that because Plaintiffs had relief available to

11

them under section 102(c), they should have exhausted that section's administrative measures, even though they are bringing suit under section 504.[3]

The Plaintiffs' decision to avoid section 102(c)'s administrative procedures is in direct contravention of the policy behind exhaustion. Exhaustion promotes "accuracy, efficiency, agency autonomy and judicial economy . . . ." *Cudjoe*, 297 F.3d at 1066 (internal quotation marks and citations omitted). The Tenth Circuit noted that exhaustion is "even more valuable" in the realm of special education, because the agencies charged with addressing grievances under the IDEA are experts in this area. *Id.* at 1065-66. "The IDEA's design provides a 'carefully structured procedure for administrative remedies,' which encourages parents to seek relief quickly when the injury occurs and 'allows the educational system to bring its expertise to bear in correcting its own mistakes.'" *Id.* at 1065 (quoting *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 486 (2d Cir. 2002)). "[T]he policy supporting the exhaustion requirement . . . counsels that parents turn first to educational professionals, as opposed to courts, to remedy disputes over a child's education." *Id.*

The same holds true for grievances under the Rehabilitation Act. Just as the IDEA is designed to address educational claims that have educational consequences, the structure of 102(c) provides adults with disabilities specific avenues for redress when they are denied appropriate services under the Rehabilitation Act. *Id.* at 1067; *see also Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000)). Allowing experts in the realm of vocational rehabilitation to work through the administrative process provided for in 102(c) before

---

[3] I have diligently researched this issue and it appears that this is a question of first impression, both in the Tenth Circuit and elsewhere.

bringing a civil action enables "the reviewing court [to] have the benefit of a well-developed administrative record in evaluating the case and determining what judicial relief, if any, is appropriate." *Cudjoe*, 297 F.3d at 1067.  Many of Plaintiffs' allegations have their root in the language of section 102(c).  Accordingly, because they bring claims for injuries directly relating to vocational rehabilitation services, the policy behind exhaustion supports a finding that they "must plead and show either that [they have] exhausted [their] administrative remedies under [section 102(c)] or that the relief [they are] seeking [is] not available under [section 102(c)]." *Id.* at 1063.

C.      **Congressional Intent.**

I find further support for this conclusion in the structure of the Rehabilitation Act.  First, the sections at issue are in place to address different wrongs: claims under 102(c) are brought to correct inappropriate services provided by designated state units; claims under 504 are brought to find redress from injuries due to discriminatory conduct by programs that receive federal funding. Consequently, there is different relief available under each section.  The Tenth Circuit has emphasized "that 'available' relief means relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers."[4]  *Cudjoe*, 297 F.3d at 1066 (internal quotation marks and citations omitted).  "The nature of the claim and the

---

[4] The Seventh Circuit provided a hypothetical situation that is analogous to this case and helps explains the concept of "available relief":

> Suppose a school fails to provide a reader for a blind pupil, who as a result falls behind. The IDEA provides relief: the school can assign a reader to the pupil for the future and can provide tutors and other special instruction until the pupil catches up.  If disgruntled parents spurn this solution and demand compensation, the response should be that they cannot ignore remedies available under the IDEA and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls.

*Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996).  Plaintiffs here had relief available to redress most, if not all, of their complaints under section 102(c).  That they now want money to compensate them for their alleged injuries does not change the fact that they had other relief available to them under section 102(c).

13

governing law determine the relief no matter what the plaintiff demands." *Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996).  Relief for the Plaintiffs' injuries is more properly found by resort to section 102(c), hence 102(c) provides the governing law.  *See id.*  Surely Congress did not intend to "permit [Plaintiffs] to circumvent the section [102(c)] exhaustion requirement by the simple expedient of suing under section 504." *Freed*, 201 F.3d at 192.

Second, the appropriate remedies available to Plaintiffs reinforce an exhaustion requirement under these circumstances.  Individuals injured by discrimination in violation of 504 have Title VI remedies available to them.  *See* 29 U.S.C. § 794a(a)(2).  "Title VI includes an administrative procedure that can lead to the withdrawal of federal funding from programs or activities that discriminate . . . ." *Freed*, 201 F.3d at 192 (citations omitted).  Persons suing under 504 are not required to exhaust this administrative process, though, because it "'cannot provide the relief [plaintiffs] seek.'" *Id.* (quoting *Chowdhury v. Reading Hosp. & Med. Ctr.*, 677 F.2d 317, 323, n.16 (3d Cir. 1982)).  Aggrieved persons must exhaust under 102(c), however, because the administrative process can provide meaningful relief – there are "unique advantages realized by" giving vocational rehabilitation experts the first shot at reviewing and correcting "shortcomings" in the services mandated by 102(c).  *Cudjoe*, 297 F.3d at 1065.  Plaintiffs' Complaint includes allegations that they did not receive appropriate counseling services, their stays at the Center were not correctly documented, the Center did not employ adequately trained staff, documents were not provided in Spanish, and Individualized Plans of Instruction did not contain goals or objectives.  (Doc. 38 at 4-5, 22.)  All of these are deficiencies the administrative procedures prescribed by section 102(c) can address.  *See* 34 C.F.R. §§ 361.48(c) ("designated

State unit must ensure that" vocational rehabilitation counseling is available as appropriate);

361.47 (describing what documents State units must maintain in each individual's record of

services); 361.18(c) (State agency must "establish and maintain standards to ensure that all

professional and paraprofessional personnel needed within the designated State unit . . . are

appropriately and adequately prepared and trained"); 361.45(c) ("State unit must provide [certain]

information . . . in the native language or mode of communication of the individual"); 361.46

(describing the mandatory components of individualized plans for employment).  Because

Plaintiffs had adequate relief available under section 102(c), exhaustion was required.

Finally, the history of the Act's amendments provides support for my conclusion.  The two

sections were added at different times: section 504 was part of the Rehabilitation Act when

Congress first passed the Act in 1973, and the section providing for a private right of action for

violations of 504 was added in 1978.  29 U.S.C. §§ 794(a), 794a; *see also Spence v. Straw*, 54

F.3d 196, 198-99 (3d Cir. 1995); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1319-20 (7th

Cir. 1984).  Congress later added a private right of action to section 102(c) in the 1998

amendments to the Act.  Pub. L. No. 105-220, 112 Stat. 936 (codified as amended at 19 U.S.C. §

722).  "[I]t would make no sense for Congress to provide . . . different sets of remedies, having

different exhaustion requirements," for different types of wrongs, and then allow plaintiffs to

exercise complete discretion in electing which section to bring suit under.  *Cf. McGuinness*, 744

F.2d at 1321 (noting that sections 501 and 504 cover the *same* types of wrongs but have different

remedies and exhaustion requirements).

### D.    When Exhaustion is Futile.

Exhaustion will not be excused "because relief is no longer 'available' at the time the

plaintiff seeks to file a civil suit if relief was available at the time the alleged injuries occurred."

*Cudjoe*, 297 F.3d at 1067.  Plaintiffs may not "'sit on' live claims and spurn the administrative

process that could provide the [rehabilitation] services they seek, then later sue for damages. . . .

[S]uch conduct . . . would frustrate the [Rehabilitation Act's] carefully crafted process for the

prompt resolution of grievances . . . ."  *Id.* (citations omitted).  The requirement to exhaust

administrative remedies may be excused, however, where a plaintiff can show that exhaustion

would have been "'futile or inadequate.'"  *Id.* at 1063, n.6 (quoting *Honig v. Doe*, 484 U.S. 305,

327 (1988)).  "The party who is seeking to avoid exhaustion bears the burden of showing that one

of these narrow exceptions applies."  *Id.*  (citing *Honig*, 484 U.S. at 327).  Plaintiffs' Response

briefly addresses one such exception: an allegation of systemic discrimination.  (Doc. 50 at 4-6.)

     Exhaustion may be excused where the available remedies would be inadequate or futile.

*Cudjoe* at 1063, n.6.  "Administrative remedies are generally inadequate or futile where plaintiffs

allege structural or systemic failure and seek systemwide reforms."  *Ass'n for Cmty. Living in*

*Colorado v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993) (citations omitted).   An example of

systemic discrimination is found in *New Mexico Ass'n for Retarded Citizens v. New Mexico*,

where plaintiffs sued under 504 alleging "that the entire special education service system offered

by the State [was] infirm."  678 F.2d 847, 851 (10th Cir. 1982).  The Tenth Circuit held that

"[t]he remedies offered at the administrative level – primarily reassignment of students within

existing programs – do not include a restructuring of the State's system to comply with Section

504 as sought by the class in this case."  *Id.*

     This exception fails to save Plaintiffs' claims for several reasons.  First, even if this Court

found evidence of systemic discrimination by the agency Defendants, Plaintiffs' still could have

found redress for their individual claims by exhausting the administrative remedies in § 722.[5]

Second, Plaintiffs lack standing to seek systemwide reform. *See, e.g.*, *Tandy v. City of Wichita*,

380 F.3d 1277, 1283 (10th Cir. 2004). Finally, for any of Plaintiffs' more sweeping claims that

might not have been remedied through the administrative process, their Complaint fails to state a

claim under section 504 for discrimination. I will discuss each of these conclusions in turn.

### 1.    Individual Redress.

A substantial portion of Plaintiffs' Complaint alleges the refusal to provide or the low

quality of appropriate individualized services guaranteed to them by § 722. Where proper

exhaustion of these individual claims would have resulted in relief through § 722's administrative

process, this Court does not have jurisdiction to address them now. For example, Ms. Victoria

Lopez alleges that institutional documents were not provided to her in Spanish  (Doc. 38 at 22);

however, Ms. Lopez has an absolute right to receive certain information "in the native language

or mode of communication" she prefers. 34 C.F.R. § 361.45(c). Ms. Lopez should have resorted

to 102(c)'s administrative procedures to rightfully demand and receive a decision that Defendants

were required to comply with the statute. *See* N.M. CODE R. § 6.101.2 (Weil 1998). Because

Plaintiffs' claims of systemic discrimination also fail, I decline to pick apart Plaintiffs' Complaint

to decide which of their allegations could have been individually addressed by 102(c)'s

administrative process. To the extent Plaintiffs could have received relief for their individual

injuries by exhausting administrative remedies, their claims are procedurally barred.

---

[5] This case is an example of a point the Tenth Circuit made in *Romer*: "Even where exhaustion is
necessary, the exhaustion of a few representative claims may be sufficient to secure statutory compliance, and, if
not, would at least serve the purposes of the exhaustion requirement and properly frame the issues for judicial
review." *Romer*, 992 F.2d at 1045 (citations omitted) (noting that although plaintiffs who brought a class action
were not properly before the court because they had failed to exhaust their administrative remedies, the court was
not holding that every plaintiff in a class would have to exhaust before a civil suit was proper).

## 2.    Systemic Discrimination.

Plaintiffs cannot find relief under 504 for systemic discrimination for two main reasons: they lack standing to seek injunctive relief, and they cannot prove two of the elements necessary to maintain a claim under this section.  (*See* Doc. 38 at 27 (seeking injunctive relief).)

### a.    Standing to Seek Injunctive Relief.

As in all cases, Plaintiffs must have standing to seek relief.[6]

> To establish Article III standing, a plaintiff must show that: (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested.

*Tandy*, 380 F.3d at 1283 (citations omitted).  "The 'injury in fact' requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief.  To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."  *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 107 n.8 (1983).  Here, the Complaint fails to establish that Plaintiffs are receiving or will likely receive further services from the agency Defendants.  *See id.* (noting that "[t]he threatened injury must be 'certainly impending' and not merely speculative") (citation omitted).  (*See also* Doc. 38 at 3 ("Plaintiffs *were*, at varying times, students and residents of the AOC during the period from 2001 to 2004.") (emphasis added).)  Plaintiffs "fail[] to demonstrate a real and immediate threat that [they will] again suffer similar injury in the future" so lack

---

[6] Because "[s]tanding . . . raises jurisdictional questions[,]" I must "consider the issue *sua sponte* to ensure that there is an Article III case or controversy before" the Court.  *Rector v. City & County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) (internal quotation marks and citations omitted).

18

standing to seek injunctive relief.[7]  *See Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494 (10th Cir. 1998) (internal quotation marks and citation omitted).

### b.        The Elements of a Discrimination Claim Under Section 504.

Even if Plaintiffs had standing to seek injunctive relief, they have failed to state a claim for discrimination under section 504, systemic or otherwise.

> [T]o state a claim under section 504, a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the [benefit] sought, (3) that he was [discriminated against] solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance.

*Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) (internal quotation marks and citations omitted); *see also* 29 U.S.C. § 794a.  Plaintiffs have failed to allege that they were "otherwise qualified" for the benefits sought or that they were discriminated against "solely by reason" of their handicap.[8]

---

[7] At the hearing on this Motion (Doc. 59), Plaintiffs' counsel acknowledged that we are not dealing with a class action so is unsure whether Plaintiffs have standing to seek injunctive relief.  Such an acknowledgment reinforces my belief that "[t]he violations alleged and relief requested in this case . . . do not target structural . . . concerns . . . ."  *Romer*, 992 F.2d at 1044 (citation omitted).

[8] Plaintiffs believe their position is supported by *O'Hayre v. Bd. of Educ. for Jefferson County Sch. Dist. R-1*, 109 F. Supp. 2d 1284 (D. Colo. 2000).  In *O'Hayre*, the plaintiffs brought suit under the Rehabilitation Act, the IDEA, and other statutes for alleged harassment and discrimination based on plaintiffs' disabilities.  *Id.* at 1287.  The court held that their claims under the IDEA were improper because they had failed to exhaust their administrative remedies.  *Id.* at 1291-93.  According to the IDEA's exhaustion provision, 20 U.S.C. § 1415(*l*), plaintiffs' claims under section 504 of the Rehabilitation Act would also be subject to exhaustion if the claim "could have been brought under the IDEA."  *Id.* at 1294.  The court held that plaintiffs made "clear . . . that their [Rehabilitation Act] claim [was] based on discrimination.  Such a claim is not provided for in the IDEA."  *Id.* Because the discrimination claim could not have been brought under the IDEA, and because the administrative process would not have afforded plaintiffs with adequate relief, plaintiffs were not required to exhaust the administrative remedies provided for in the IDEA.  *Id.* (citing *New Mexico Ass'n for Retarded Citizens*, 678 F.2d at 850).

This case is distinguishable.  First, Plaintiffs could have found adequate relief by exhausting the administrative process found in section 102(c).  Second, Plaintiffs have not made it "clear" that their claims are properly brought pursuant to section 504.  *Id.*  I do not believe the *O'Hayre* decision stands for the proposition that Plaintiffs may merely mention the word "discrimination" without going on to allege the elements of a proper discrimination claim under 504.

"Section 504 proscribes discrimination between the nonhandicapped and the 'otherwise qualified' handicapped." *Johnson*, 971 F.2d at 1494.  To establish the second element of a claim under 504, Plaintiffs must show that they were denied services guaranteed to them by the Rehabilitation Act, and that, in spite of their disability, they were "otherwise qualified" to receive the denied services.  *Id.* at 1493.  In other words, if Plaintiffs are otherwise qualified, they can "meet all of [the] program's requirements *in spite of* [their] handicap."  *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) (emphasis added).  This is simply not the case.  The agency Defendants have a statutory duty to provide vocational training and related services to blind persons; "Plaintiffs are entitled to such services *because* they are blind."  (Doc. 41 at 15 (citing Doc. 38 at 3-6).)  *See also* N.M. STAT. §§ 28-7-16, -17(D) (1978).

Plaintiffs argue that this results in a "conundrum," in that the agency Defendants would be "free to discriminate against [blind persons] at will in the delivery of required habilitation services."[9]  (Doc. 50 at 4-5.)  I disagree.  Plaintiffs had remedies available to them under § 722; their decision to ignore those remedies does not allow them to now ignore the requirements of a proper suit under 504.  The plain language of the statute requires that Plaintiffs be "otherwise qualified."  It does not make an exception for cases of alleged systemic discrimination. "'Otherwise qualified' means that were [they] not handicapped, [they] would have qualified for the program or treatment [they were] denied because of [their] handicap. . . . [They are] not 'otherwise qualified' because, absent [their] handicap, [they] would not have been eligible for treatment in the first place."  *Grzan v. Charter Hosp.*, 104 F.3d 116, 120-21 (7th Cir. 1997).

---

[9] I attribute little weight to this argument since Plaintiffs do not standing to seek an injunction to stop any of the alleged discriminatory services.

Furthermore, the Tenth Circuit has spoken very clearly to this issue: "Without a showing that the nonhandicapped received the [services] denied to the 'otherwise qualified' handicapped, [Plaintiffs] cannot assert that a violation of section 504 has occurred." *Johnson*, 971 F.2d at 1494. Plaintiffs are entitled to the Defendants' services only because they have adult-onset blindness. (Doc. 38 at 3.) "Thus, they were not 'otherwise qualified' to receive the [vocational rehabilitation services] denied to them because of the alleged discrimination." *Johnson*, 971 F.2d at 1494.

Plaintiffs fail to even allege the third requirement for establishing a discrimination claim under section 504. Plaintiffs must establish that the Defendants discriminated against them "solely by reason of" their disability. 29 U.S.C. § 794a. "The word solely provides the key: the discrimination must result from the handicap and from the handicap alone." *Johnson*, 971 F.2d at 1493. Nowhere in their Complaint do Plaintiffs allege that their disability was the sole reason – or even one of many reasons – for the alleged discrimination. Thus, they fail to state a claim for discrimination under 504.

Plaintiffs have an uphill battle to state a claim for discrimination, because "[s]ection 504, by its very terms, does not cover discrimination among similarly handicapped persons."[10]

---

[10] Plaintiffs argue that Justice White's dissent in *Bowen v. Am. Hosp. Ass'n* is applicable to their case. 476 U.S. 610 (1986). (*See also* Doc. 50 at 6.) I disagree. An example of Justice White's reasoning was discussed by the Tenth Circuit in *Johnson*:

> An esophageal obstruction . . . would not be part and parcel of the handicap of a baby suffering from Down's syndrome, and the infant would benefit from and is thus otherwise qualified for having the obstruction removed in spite of the handicap. . . . If an otherwise normal child would be given the identical treatment, so should the handicapped child . . . .

971 F.2d at 1494, n.3 (quoting *Bowen*, 476 U.S. at 655 (footnote omitted) (White, J., dissenting)) (second citation omitted). As in *Johnson*, Justice White's fictional scenario is inapposite to our situation. *Id.* "Otherwise normal" adults would not be given Defendants' services because they do not need rehabilitation services designed for persons with adult-onset blindness.

*Johnson*, 971 F.2d at 1492 (citation omitted). Instead, "what [they] ultimately seek[] to challenge is not illegal discrimination against the disabled, but the substance of the services provided to [them] . . . . To provide the modifications [they] seek[] would not serve the purpose of leveling the playing field with respect to the benefits . . . available to the non-handicapped." *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998). Plaintiffs have failed to allege two of the elements of a discrimination claim pursuant to section 504. Consequently, they have failed to state a claim according to FED. R. CIV. P. 12(b)(6) and their claims under 504 necessarily fail. *See Cannady*, Civ. No. 04-1143, Doc. 35, at 4-5 (a court may not "assume that a plaintiff can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged") (internal quotation marks and citation omitted).

Again, Plaintiffs had the option to turn to section 102(c) to find relief for any injuries they allegedly suffered. I have no jurisdiction to consider Plaintiffs' individual claims under section 102(c) because they failed to exhaust the available administrative remedies, and if any claims remained and were proper under section 504, the Complaint alone is not legally sufficient to state a claim for which relief may be granted. *See Sutton*, 173 F.3d at 1236. Plaintiffs have now had two chances to frame their complaint in a way that would survive a motion to dismiss. I am not inclined to give Plaintiffs a third bite at the apple, so will dismiss their claims under the Rehabilitation Act.

### IV.   ANALYSIS OF PLAINTIFFS' § 1983 CLAIMS.

The individual Defendants are entitled to qualified immunity for all of Plaintiffs' claims pursuant to § 1983. "Persons sued in their individual capacity under 42 U.S.C. § 1983 generally are entitled to qualified immunity unless it is shown that their actions violated a specific

constitutional right and that the right which they allegedly violated was clearly established at the time of the conduct at issue. *Martinez v. Espanola Pub. Sch.*, Civ. No. 04-0737, Doc. 44, at 23 (D.N.M. Dec. 22, 2005) (citing *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000)). "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains.'" *Id.* (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). Even without a decision on point, officials may be on notice that their conduct is unconstitutional if the "conduct amounts to obvious cruelty." *Id.* (internal quotation marks and citations omitted). "The 'salient question' is whether the state of the law at the time of the incident gave the defendants 'fair warning' that their conduct was unconstitutional." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The issue of whether Defendants are entitled to qualified immunity is properly considered in a motion pursuant to FED. R. CIV. P. 12(b)(6), and "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (internal quotation marks and citation omitted). While the "defense does not impose any heightened-pleading requirement or evidentiary burden on Plaintiffs[,]" Plaintiffs are required, in their Response, "to cite legal authority showing that the factual allegations in their pleading amount to a constitutional violation and that the specific constitutional right at issue is clearly established." *Martinez*, Civ. No. 04-0737, Doc. 44, at 23-24 (citing *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001); D.N.M. LR-Civ. 7.5(a)). "Once a defendant asserts a qualified immunity defense, the burden shifts to the

23

plaintiff . . . [to] show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred." *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (citations omitted). "If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity." *Id.* (citing *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir.2001)).

Plaintiffs fail to satisfy this burden. Their § 1983 claims are based on alleged violations of the Fourteenth Amendment. Specifically, they claim that the individual Defendants deprived them of property without due process, violated their rights to bodily integrity and personal security, and denied them equal protection of the laws. (Doc. 38 at 8-11, 13-16, 18-21, 23-26.) Defendants assert they are entitled to qualified immunity for each of these three claims; yet, Plaintiffs' Response only refers to the alleged violations of their rights to bodily integrity and personal security. (Docs. 41 at 17-24; 50 at 6-9.) Plaintiffs have failed to provide any responsive argument or authority to Defendants' assertion of qualified immunity for the causes of action asserting violations of Plaintiffs' rights to procedural and substantive due process and equal protection. Pursuant to D.N.M. LR-Civ. 7.1(b)), the Court treats an issue to which no timely response is made as unopposed and resolves the issue in favor of the moving party unless it would be incorrect or improper to do so. The effect of Plaintiffs' omission is to both deprive the Court of the benefit of their reasoning on the issue of qualified immunity, and to give rise to this procedural presumption that the qualified immunity defense should be permitted unless the Court determines that to do so would be an incorrect application of the law. After reviewing the authorities provided by Defendants and conducting my own independent research into this area of the law, I do not find any authority suggesting that it would be improper to apply the qualified

24

immunity defense to Plaintiffs' claims regarding procedural and substantive due process and equal protection.  Furthermore, at the Hearing on Defendants' Motion to Dismiss (Doc. 59), I clarified the factual bases of each of the § 1983 claims and also which of those claims Plaintiffs addressed in their Response.  For the two § 1983 claims to which Plaintiffs failed to respond, the factual allegations revolve around conduct by the agency Defendants.  Because the Plaintiffs have already conceded that § 1983 claims against the agency Defendants are improper, those claims will be treated as unopposed and dismissed.

Plaintiffs assert in their remaining § 1983 claims that the individual Defendants subjected Plaintiffs "to dangerous situations and conditions[,] and . . . to obvious cruelty [which] created a dangerous environment and violated Plaintiff[s'] right to bodily integrity and personal security under the Fourteenth Amendment."  (Doc. 38 at 9-10, 14-15, 19-20, 24-25.)  These allegations stem from several of the incidents described above in Sections I.B.-E, all of which are insufficient to establish liability under the Fourteenth Amendment.  (Doc. 38 at 6-7, 12, 17, 22-23.)  The right to bodily integrity and personal security "is not measured by a standard equivalent to the lowest common denominator of customary tort liability, . . . [and] is . . . implicated when state officials intrude into realms of personal privacy and personal security through means so brutal, demeaning, and harmful as literally to shock the conscience of the court."  *Martinez*, Civ. No. 04-0737, Doc. 44, at 29 (internal quotation marks and citations omitted).

The factual allegations in Plaintiffs' Complaint, in their totality, are not sufficient to establish a viable substantive due process claim.  The claims fail because they amount to nothing more than torts actionable under state law.  It is well established that "section 1983 must not be used to duplicate state tort law on the federal level."  *Medina*, 960 F.2d at 1495 (internal

25

quotation marks and citation omitted).  "The Fourteenth Amendment is not 'a font of tort law to be superimposed upon whatever systems may already be administered by the States.'"  *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  The only such behavior actionable under the Fourteenth Amendment is that which shocks the conscience.  *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 848-50 (1998).

The cases cited by Defendants in their Reply brief are illustrative of conduct that the Tenth Circuit and the District of New Mexico has found to be conscience-shocking.  (Doc. 52 at 8-11.) *See*, *e.g.*, *Sutton*, 173 F.3d at 1230-31, 1238 (boy who could not speak and who suffered from cerebral palsy, mental retardation, and blindness was sexually molested by another boy in a school bathroom; school learned of the incident, but did not properly supervise the bathroom and the boy was molested again days later); *Garcia ex rel. Garcia v. Miera*, 817 F.2d 650, 652-54 (10th Cir. 1987) (principal beat a nine-year-old girl with a  paddle so hard that blood soaked through the girl's clothes and she suffered permanent scarring; principal later beat the girl again, even though the girl's parents had asked the principal not to strike her without calling them first); *Martinez*, Civ. No. 04-0737, Doc. 44, at 26-35 (student suffered from multiple disabilities including Down's syndrome and autism; school administrators engaged in affirmative conduct which allowed student's classroom to descend into such chaos that the student would jam his fingers into his ears until they bled, suffer self-induced vomiting, and run away).[11]

---

[11] Plaintiffs rely heavily on *Martinez* in arguing that the individual Defendants are not entitled to qualified immunity.  (Doc. 50 at 6-9.)  The situation in *Martinez*, however, is highly distinguishable from the factual allegations in Plaintiffs' Complaint.  In *Martinez*, the court allowed the plaintiffs' substantive due process claims based on their liberty interest in bodily integrity and personal security to stand, because the individual defendants' conduct led to a chaotic situation which resulted in severe injuries.  *Martinez*, Civ. No. 04-0737, Doc. 44, at 29-30. Further, the plaintiffs had "sufficiently alleged an affirmative link between the deprivation of [their] right to substantive due process and the supervisory conduct of" certain individual defendants.  *Id.* at 31.  Here, Plaintiffs have not alleged facts to support a claim for supervisory liability against any individual Defendants, nor have

Compare these with cases, also cited by Defendants (Doc. 52 at 8-11), in which the Tenth Circuit or the District of New Mexico have found that certain conduct is *not* conscience-shocking.  *See*, *e.g.*, *Harris v. Robinson*, 273 F.3d 927, 929, 931 (10th Cir. 2001) (conduct of teacher who ordered mildly to moderately retarded ten-year-old boy to clean out a toilet with his bare hands was not conscience-shocking because her actions were not inspired by malice or sadism and the boy was not subjected to appreciable pain); *Uhlrig v. Harder*, 64 F.3d 567, 570-76 (10th Cir. 1995) (finding that administrators of mental hospital had not violated plaintiff's substantive due process rights after the administrators released a high risk patient to the general population, who then attacked and killed plaintiff's wife, a therapist at the hospital); *Gonzales v. Passino*, 222 F. Supp. 2d 1277, 1279-81 (D.N.M. 2002) (conduct of teacher who intentionally pushed and hit a student, causing tenderness, bruising, and swelling, was not conscience-shocking); *Martinez*, Civ. No. 04-0737, Doc. 44, at 26-35 (conduct amounting to "ordinary negligence or battery claims [] are not cognizable under the substantive component of Due Process Clause").

While inappropriate and tasteless, the allegations of sexual advances, insults, refusal to aid, and the rest of Plaintiffs' claims, are simply not egregious enough to impose Fourteenth Amendment liability on the Defendants.  Furthermore,

> It is the plaintiff's burden to convince the court that the law was clearly established.  In doing so, the plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it.  Instead, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."  While the plaintiff need not show that the specific action at

---

Plaintiffs cited legal authority to support their claim that the conduct they have alleged violates a constitutional or statutory right that is clearly established.

27

issue has previously been held unlawful, the alleged unlawfulness must be "apparent" in light of preexisting law.  The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  If the plaintiff is unable to demonstrate that the law allegedly violated was clearly established, the plaintiff is not allowed to proceed with the suit.

*Medina*, 960 F.2d at 1497 (10th Cir. 1992) (quoting *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (internal quotation marks omitted)).  Plaintiffs have not even attempted to meet this burden, and after diligently searching, I cannot find clearly established authority from the Supreme Court, the Tenth Circuit, or any other court that would support Plaintiffs' position.  *See id.* at 1498.  Plaintiffs did, however, briefly mention two theories which they argue should establish liability.  I will address these theories in more detail with respect to several of Plaintiffs' claims.

### A.      The "Special  Relationship" Doctrine.

"Normally, 'state actors are liable only for their own acts, and not the violent acts of third parties.'"  *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003) (quoting *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir.1998)).  Consequently, Defendants' failure to protect Plaintiffs from "'private violence simply does not constitute a violation of the Due Process Clause.'"  *Id.* (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).  The "special relationship" doctrine avoids the defense of qualified immunity where "the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual. . . ."  *Id.* at 1280 (internal quotation marks and citations omitted).  (*See also* Doc. 50 at 8-9.)  The doctrine does not apply in this case.

"'[I]f the state restrains an individual's freedom to act to protect himself or herself through

a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others.'" *Christiansen*, 332 F.3d at 1280 (quoting *Armijo*, 159 F.3d at 1261). Plaintiff Baumeister argues that Defendant Lightfoot "refused to allow Baumeister to remove her sleep shades" so that she could fight off her attacker.[12] (Doc. 38 at 6.) Encouraging Baumeister to deal with her attacker without using her limited vision does not amount to involuntary restraint, nor did it prevent Baumeister from acting on her own behalf, as she successfully fended off the attacker alone. (*See id.*) Without involuntary restraint, "no duty to protect arises under the special-relationship theory." *Christiansen*, 332 F.3d at 1280 (quoting *Armijo* 159 F.3d at 1261). "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament . . . but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* (internal quotation marks and citations omitted). Lightfoot's "refusal to allow" Baumeister from using her limited vision during the attack did not limit Baumeister's freedom to act on her own behalf. *See id.* Lightfoot is entitled to qualified immunity for this incident. Defendant Martinez is also entitled to qualified immunity because her act of letting strangers into the Center did not impose any limitation on Plaintiff Perea's freedom, making the "special relationship" exception inapplicable.

Nor does the special relationship doctrine save the Plaintiffs' claims that Defendants failed to provide them with medical care. (Doc. 38 at 6-7, 12, 22.) The Tenth Circuit has held that "defendants' alleged nonfeasance in the face of specific information which would mandate action does not invoke the protection of the Due Process Clause." *Graham v. Indep. Sch. Dist. No.*

---

[12] The Court accepts this allegation as true, but, frankly, it is difficult to envision.

*I-89*, 22 F.3d 991, 995 (10th Cir. 1994). "'Inaction by the state in the face of a known danger is not enough to trigger the obligation; . . . the state must have limited in some way the liberty of a citizen to act on his own behalf.'" *Id.* (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, 510 U.S. 947 (1993)). "In the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances." *Id.* Plaintiffs were residents of the Center, there was no "custodial relationship."[13] Even if Plaintiffs could prove Defendants knew of any dangerous medical circumstances, Plaintiffs have no constitutional claim against Defendants. *See id.* The special relationship doctrine does not save any of Plaintiffs' claims.

## B.    The "State-Created Danger" Doctrine.

The "state-created danger" doctrine will overcome the defense of qualified immunity where the state actor "created the danger that harmed the individual." *Christiansen*, 332 F.3d at 1280 (internal quotation marks and citations omitted). Under the second exception, if the Defendants "'created the danger' that caused the harm[,]" they may not be entitled to qualified immunity. *Id.* at 1281 (quoting *Seamons v. Snow*, 84 F.3d 1226, 1236 (10th Cir.1996)).

> To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Id.* (citing *Gonzales v. City of Castle Rock*, 307 F.3d 1258, 1263 (10th Cir.2002)). Plaintiffs'

---

[13] As Defendants pointed out in a previous brief, "[i]t is demeaning to blind persons to suggest that by obtaining vocational training and adjustment, they become wards of the state." (Doc. 31 at 7.)

only attempt to demonstrate the above factors is by pointing the Court to their Complaint, which they contend satisfies the elements of the doctrine.  (Doc. 50 at 9.)  I disagree and will address two specific incidents.

        1.     While Defendant Lightfoot "refused to allow Baumeister to remove her sleep shades[,]" his actions did not create any danger or increase her vulnerability to the attack; rather, she successfully fended off her attacker without using her admittedly "limited vision." (Doc. 38 at 6.)  *See also Christiansen*, 332 F.3d at 1281.  Moreover, the "danger" existed prior to Lightfoot's intervention, so he cannot be liable for "creating" it.  *Christiansen*, 332 F.3d at 1281.  Plaintiffs have also not established the requisite scienter, which the Tenth Circuit has interpreted as an actual intent "to expose the plaintiff to [unreasonable] risks without regard to the consequences to the plaintiff."  *Id.*  (internal quotation marks and citation omitted).  Even if Lightfoot's instruction was negligent, there is no allegation that it was "deliberately wrongful." *See id.*  Finally, Lightfoot's actions were not so outrageous that they shock the conscience.  *Id.* The Tenth Circuit has stated that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  *Uhlrig*, 64 F.3d at 574.  As an instructor at the Center, one of Lightfoot's duties was to "increase [Baumeister's] ability to function with blindness."  (Doc. 38 at 3.)  I do not find that his refusal to allow Baumeister to use her limited vision to fight off an attacker "'amounted to a brutal and inhumane abuse of official power literally shocking the conscience.'"  *Gonzales*, 222 F. Supp. 2d at 1280 (quoting *Garcia*, 817 F.2d at 654).  This claim does not satisfy the "state-created danger" doctrine and must also be

dismissed.

        **2.**     Plaintiff Perea also fails to demonstrate a proper "danger creation" claim. Specifically, Plaintiff does not allege that Defendant Martinez knew that the strangers she admitted into the Center would attempt to extort money from Plaintiff.  (*See* Doc. 38 at 17.) Without even a bare allegation that Martinez knew of the threats posed by the strangers, Plaintiff cannot demonstrate that Martinez knew her conduct put Plaintiff at a "substantial risk of serious, immediate, and proximate harm . . . ." *Christiansen*, 332 F.3d at 1281 (citation omitted).  Again, "[t]he Due Process Clause protects against 'deliberately wrongful government decisions rather than merely negligent government conduct.'" *Id.* (quoting *Uhlrig*, 64 F.3d at 573).  The Complaint does not allege that Martinez acted with actual intent to expose Plaintiff to threats and extortion.  *See id.*  (*See also* Doc. 38 at. 17.)  A liberal construction of Plaintiff's claim does not save it from dismissal under 12(b)(6).  *Martinez*, Civ. No. 04-0737, Doc. 44, at 8.  The Complaint, standing alone, does not support application of the "danger creation" doctrine, so Martinez cannot be held liable for the acts of the strangers.  *See Sutton*, 173 F.3d at 1236; *Christiansen*, 332 F.3d at 1279.

       **V.**        **CONCLUSION.**

        Plaintiffs' Complaint is dismissed for several reasons.  First, Plaintiffs had the opportunity to have their individual claims heard and remedied by resort to section 102(c)'s administrative procedures.  Because I find that exhaustion was required in this case, I do not have jurisdiction to hear those claims now.  Second, even if exhaustion was not required, Plaintiffs have failed to state a cognizable claim under section 504 of the Rehabilitation Act, even though they have had two opportunities to do so.  Third, the individual Defendants are entitled to qualified immunity for

Plaintiffs' § 1983 claims. Plaintiffs did not address Defendants' arguments regarding two bases for the § 1983 claims, and have wholly failed to state a claim of violation of clearly established law which shocks the conscience for their remaining cause of action.[14] I have researched the two abandoned § 1983 claims, and can find no reason why it would be improper to dismiss them. Finally, Plaintiffs conceded that the § 1983 claims against the agency Defendants are improper. (Doc. 50 at 2.) Accordingly, I conclude that Defendants' Motion to Dismiss should be **GRANTED**, and Plaintiffs' Complaint should be **DISMISSED**.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' First Amended Complaint is **DISMISSED.**

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Plaintiffs asked during the Motion Hearing (Doc. 59) for another chance to amend their Complaint in order to add new defendants, namely, individuals in positions of authority with the agency Defendants. It is Plaintiffs' position that such individuals are more appropriate defendants for their § 1983 claims. Plaintiffs are reminded that they have already had one chance to add new defendants and did not do so. (*See* Doc. 39 at 7 (granting time to amend "provided that [Plaintiffs] will thoroughly research the validity of each claim, keeping in mind FED. R. CIV. P. 11").)